IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEX KUKICH, Individually and on behalf of
all others similar situated,

    *Plaintiff,*

    v.                                Civil Action No. ELH-16-3412

ELECTROLUX HOME PRODUCTS, INC.,

    *Defendant.*

**MEMORANDUM OPINION**

In October 2016, plaintiff Alex Kukich, individually and on behalf of all others similarly situated, filed suit against defendant Electrolux Home Products, Inc. ("Electrolux"), alleging that the stainless steel handles on "Over-The-Range Microwave Ovens" ("Microwave(s)") designed and manufactured by Electrolux dangerously reach up to 168°F when the "cooking surface below is in operation . . . ." ECF 1 ¶ 1; *see also id.* ¶ 34. The Complaint is supported by several exhibits (ECF 1-3 to ECF 1-5). In the Complaint, Kukich asserts claims, *inter alia*, for strict liability on the basis of design defect and failure to warn (*id.* ¶¶ 69-89); negligent failure to warn (*id.* ¶¶ 90-101); negligence (*id.* ¶¶ 102-110); violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (*id.* ¶¶ 111-123); and unjust enrichment (*id.* ¶¶ 134-139).[1]

Kukich, who is a citizen of Maryland (*id.* ¶ 6), seeks to certify two classes. First, he seeks to certify a class under Fed. R. Civ. P. 23(b)(2), consisting of "[a]ll persons in the United States who own a Microwave with a 400-Grade Stainless Steel Handle." *Id.* ¶ 44. Second, he seeks to certify a class, pursuant to Fed. R. Civ. P. 23(b)(3), consisting of "[a]ll persons in the

---

[1] Plaintiff asserts that jurisdiction is based on 28 U.S.C. § 1332(d), because the matter is a class action under Fed. R. Civ. P. 23. ECF 1 ¶ 16.

State of Maryland who own a Microwave with a 400-Grade Stainless Steel Handle that was purchased during the four (4) years preceding the filing of this action." *Id.* ¶ 45.

Electrolux has moved to transfer the case to the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a) (ECF 25), where a similar case is pending. The motion is supported by a memorandum of law (ECF 25-1) (collectively, "Motion" or "Motion to Transfer") and several exhibits. ECF 25-2 through ECF 25-6. Kukich opposes the Motion (ECF 32, "Opposition") and submitted exhibits in support of his position. ECF 32-1 through ECF 32-3. Electrolux has replied. ECF 33 ("Reply"). Each party has also submitted a "Notice of Supplemental Authority." ECF 31 (Kukich); ECF 38 (Electrolux).[2]

The Motion is well briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For these reasons that follow, I shall grant the Motion.

## I.    Factual Background[3]

Electrolux is a Delaware corporation with its principal place of business in North Carolina. ECF 1 ¶ 10. It is in the "business of designing, manufacturing, and distributing the Microwaves throughout the United States . . . ." *Id.* ¶ 12. The Microwaves "are designed for installation on a vertical wall directly over the cooking surface of the range." *Id.* ¶ 2. Electrolux distributes its products under a variety of brand names, including Electrolux; Electrolux ICON; Frigidaire Professional; Frigidaire Gallery; Frigidaire; Eureka; Kelvinator; Sanitaire; Tappan; and White-Westinghouse. *Id.* ¶ 11.

---

[2] Also pending is defendant's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 24. Plaintiff has responded in opposition (ECF 30) and defendant has replied. ECF 34. Because I shall grant the Motion to Transfer, I have not considered the motion to dismiss.

[3] Given the posture of the case, I accept as true the facts alleged in the Complaint.

Kukich owns a Frigidaire Gallery Over-The-Range Microwave Oven, Model No. FGMV174KFC, which he purchased from the "HHGREGG" store in Catonsville, Maryland in October 2013.  *Id.* ¶¶ 7-8, 29-31.  It is "designed, manufactured, and intended to be used 'over-the range' with its unique stainless steel 'Handle Design.'"  *Id.* ¶ 21.  The Microwave "was installed pursuant to Defendant's installation instructions."  *Id.* ¶ 7.

The Microwave's handle is constructed with "400-grade stainless steel", which is known to absorb and conduct heat.  *Id.* ¶¶ 1-2, 22.  It is identified as Electrolux part number 5304471830.  *Id.* ¶ 23.  The handle is used "to access the appliance for use, and is the only way to open the Microwave door."  *Id.* ¶ 24.  Notably, the handle is "designed for use with a bare hand . . . ."  *Id.*  However, because the stainless steel handle of the Microwave can reach temperatures of over 168°F (75.55°C) in the normal operation of the oven, it creates "a risk of serious injury to anyone who touches the handle with a bare hand . . . ."  *Id.* ¶¶ 1, 25.  While cooking on his stove, Kukich "discovered the exceedingly high temperature of [the Microwave] handle."  *Id.* ¶ 33.

Underwriters Laboratories, an independent safety science company, has stated that the maximum acceptable temperature for "[b]are or painted metal" handles is 131°F (55°C).  *Id.* ¶ 3.  And, ASTM International (formerly, the American Society for Testing and Materials) has said that skin contact with metallic surfaces at temperatures greater than 154°F (68°C) can result in irreversible skin damage.  *Id.* ¶¶ 4, 26.  Yet, "[d]efendant has not provided any warnings, instructions, or visible indicators that the 400-Grade Stainless Steel Handle becomes hot with the operation of the cooking surface below and may cause serious burns or other injuries."  *Id.* ¶ 28.

Kukich claims that defendant continues to design, manufacture, market, advertise, and sell Microwaves with handles that cause burns and other injuries, despite knowing of the flaw

with the handles.  *Id.* ¶ 40.  Kukich also complains that Electrolux has failed to implement a "recall or repair program to adequately announce . . . the existence" of the defect.  *Id.*

## II.    Discussion

Electrolux has moved to transfer this case to the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a) (ECF 25), where the case of *Rice v. Electrolux Home Products, Inc.*, 4:15-cv-0371-MWB ("*Rice*") is pending in the Williamsport Division of that district (Brann, J.).  Electrolux attached as an exhibit to its Motion the suit filed by Ms. Rice on February 18, 2015.  *See* ECF 25-3.  According to defendant, *Rice* is "based on the same allegations that form the basis of Kukich's complaint."  ECF 25-1 at 5.  Electrolux points out that in *Rice*, as here, the plaintiff seeks to certify a national class under Rule 23(b)(2), consisting of "[a]ll persons in the United States who own a Microwave with a stainless steel handle . . . ."  *Id.* at 7; *see* ECF 1 ¶ 62 in *Rice*.  Given the pendency of the *Rice* case, Electrolux maintains that "the interests of justice weigh heavily in favor of transferring . . . to avoid duplicative litigation, avoid inconsistent rulings, and promote judicial efficiency."  ECF 25-1 at 5.

Kukich opposes the Motion to Transfer.  ECF 32.  He states, *inter alia*, that the Pennsylvania court lacks personal jurisdiction over him and that a Maryland court should apply Maryland law with regard to the claims under Maryland law.  ECF 32 at 5, 14.

## A.

Section 1404(a) of 28 U.S.C. states, in pertinent part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  This provision "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice."  *Van Dusen v. Barrack*, 376 U.S. 612, 616

(1964).  To that end, it helps "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Id.* (citation omitted).

Notably, "[t]he decision whether to transfer is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *see Volkswagen*, 545 F.3d at 312 ("'There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'"); *see also Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443 (4th Cir. 2015); *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).  In the exercise of that discretion, the district court must weigh "a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Plumbing Servs., Inc.*, 791 F.3d at 444; *see, e.g.*, *Mamani*, 547 F. Supp. 2d at 469; *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005).  Other factors include the "local interest in having localized controversies settled at home" and the "appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004).

The moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper.  *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).  To the extent that the movant claims hardships arising from the venue, "the movant should submit, for example, affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in

the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (citing *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002)).   Bald assertions of inconvenience or hardship are not sufficient.  *Dow*, 232 F. Supp. 2d at 713.

**B.**

Under § 1404(a), the "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *In re: Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (internal quotations omitted).   In order to transfer a case to another district, the transferee court must have personal jurisdiction *over the defendant*.  *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

Here, subject matter jurisdiction is predicated on 28 U.S.C. § 1332(d) (ECF 1 ¶ 16), which is part of the diversity jurisdiction statute.  Under 28 U.S.C. § 1391(b), venue for such an action exists in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1391(c) states, in part:

> [A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .

Electrolux claims that venue is proper in the Middle District of Pennsylvania because it has consented to personal jurisdiction in Pennsylvania based on its registration as a foreign corporation in that State.  ECF 25-1 at 11; *see*  28 U.S.C. § 1391(c). Electrolux has submitted an

exhibit demonstrating that since 1992 it has been registered as a foreign corporation in Pennsylvania.  *See* ECF 25-6.

Plaintiff asserts that "it cannot be held that venue is proper in Pennsylvania for the claims of a Maryland resident against a North Carolina company."  *Id.*  Such a determination, according to Kukich, "would turn the venue requirements upside down."  *Id.*  In addition, plaintiff argues that Pennsylvania lacks personal jurisdiction "over Mr. Kukich," because Kukich is domiciled in Maryland and lacks "'continuous and systematic' contact[s] with Pennsylvania."  ECF 32 at 9. According to Kukich, "Electrolux ignores this threshold, critical issue", which constitutes "the death knell to its motion."  *Id.*

 "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists . . ." over a defendant.  *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  This applies to § 1332(d).  *See, e.g.*, *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1104 (N.D. Ill. 2015) (applying the two-step test for personal jurisdiction in the context of § 1332(d)) (citing *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004)). The Fourth Circuit explained in *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993):  "In the first step, we determine whether the long-arm statute authorizes the exercise of jurisdiction in the circumstances presented. If we answer that affirmatively, we consider whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards."   (Internal citations omitted); *accord Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 212 (4th Cir. 2002).

As to Electrolux, the first step is readily satisfied.  "Pennsylvania law imposes a basis for personal jurisdiction over a business if the business qualifies as a foreign corporation in the state.[1]"  *Bors v. Johnson & Johnson*, ___ F. Supp. 3d. ___, 2016 W.L. 5172816 at *2 (E. D. Pa.

Sept. 20, 2016) (citing *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).  The relevant

Pennsylvania statute is 42 Pa.C.S.A. § 5301.  It provides, *id.* (emphasis added):

> **(a) General rule.**--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth *to exercise general personal jurisdiction over such person*, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:
>
> * * *
>
> > (2) Corporations.--
> >
> > > (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> > >
> > > (ii) Consent, to the extent authorized by the consent.
> > >
> > > (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.
>
> * * *
>
> **(b) Scope of jurisdiction.**--When jurisdiction over a person is based upon this section *any cause of action may be asserted against him, whether or not arising from acts enumerated in this section*. Discontinuance of the acts enumerated in subsection (a)(2)(i) and (iii) and (3)(i) and (iii) shall not affect jurisdiction with respect to any act, transaction or omission occurring during the period such status existed.

Clearly, 42 Pa.C.S.A. § 5301 provides that the act of registering as a foreign corporation

in Pennsylvania submits the corporation to the general jurisdiction of the Pennsylvania courts.

*See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *All Risks, Ltd. v.

Butler*, No. CV GLR-15-3146, 2016 WL 4435477, at *2 (D. Md. Aug. 22, 2016); *CoStar Realty

Info., Inc. v. Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009); *see also* 4 C. WRIGHT AND A.

MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.3 (4th ed.) ("Wright and Miller") ("Personal

jurisdiction can be based on the defendant's consent to have the case adjudicated in the forum, or

the defendant's waiver of the personal jurisdiction defense.[1]").   Under Pennsylvania law,

Elextrolux is subject to suit in Pennsylvania.

As to the second step, the United States Supreme Court has long held that the exercise of personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009). The difference between the two turns on the nature and extent of the contacts with the forum state that are necessary to meet the "minimum contacts" threshold.

The Fourth Circuit explained in *CFA Inst.*, 551 F.3d at 292 n.15:

General personal jurisdiction, on the one hand, requires "continuous and systematic" contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

(Citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15, (1984)) (internal citations omitted).

In other words, a court may exercise general jurisdiction to hear "any and all claims" against corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). In contrast, specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Id.* (citation omitted) (alteration in *Goodyear*).

*Bors*, *supra*, 2016 WL 5172816, is instructive. There, the Eastern District of Pennsylvania considered whether the Supreme Court's decision in *Daimler AG v. Bauman*, ___

U.S. ___, 134 S. Ct. 746 (2014), altered or eliminated general jurisdiction applicable to foreign corporations that register to do business in Pennsylvania pursuant to 42 Pa.C.S.A. § 5301, and thus consent to personal jurisdiction.  It noted that *Daimler* "focused on personal jurisdiction absent consent."  *Id.* at *1.  Notably, the *Bors* Court said, *id.*:  "When, as here, a foreign corporation registers to do business under the Pennsylvania corporate statute specifically advising the registrant of its consent to personal jurisdiction through registration, . . . general and specific jurisdiction principles applying to non-consensual personal jurisdiction do not apply."

In the *Bors* Court's view, *Daimler* "does not eliminate consent to general personal jurisdiction over a corporation registered to do business in Pennsylvania.[1]"  *Bors*, 2016 WL 5172816 at *3.  In reaching this conclusion, the court noted: "A court's exercise of general jurisdiction based on a corporation's consent differs from general jurisdiction established when a corporation is 'essentially at home' in the forum state, as described in *Daimler*.[1]"  *Id.* at *4 (quoting *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F.Supp.3d 572, 587 (D. Del. 2015), *aff'd*, 817 F.3d 755 (Fed. Cir. 2016)).

To my knowledge, the Third Circuit has not yet considered whether, in light of *Daimler*, the Pennsylvania statute may confer general jurisdiction over a foreign corporation registered in the State.  But, I am persuaded by the reasoning in *Bors*.  Accordingly, I am satisfied that, based on Electrolux's registration as a foreign corporation in Pennsylvania, it has consented to general jurisdiction in Pennsylvania.

The parties have not addressed *Hoffman v. Blaski*, 363 U.S. 335 (1960), which precludes transfer under 28 U.S.C. § 1404(a) where personal jurisdiction in the transferee district is based on consent or waiver.  *See* Wright & Miller § 3845.  The *Hoffman* Court said, 363 U.S. at 342-43, that the phrase in § 1404(a) – "where [suit] might have been brought" – does not mean

"where it may now be rebrought, with defendants' consent."   The Court also agreed with the lower court, which had said, *id.* at 344:

> "If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where (the action) might have been brought.'  If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently (makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum)."  (Some internal quotations omitted) (quoting *Blaski v. Hoffman*, 260 F.2d 317, 321 (7th Cir. 1958)).

As indicated, the critical question in *Hoffman* was whether the plaintiff had the right to sue in the proposed transferee district, "independently of the wishes of defendant . . . ." *Hoffman*, 363 U.S. at 344.   Here, Kukich could have brought suit against Electrolux in Pennsylvania, without regard to "the wishes" of defendant.   Since 1992, Electrolux has been registered in Pennsylvania as a foreign corporation.   Under Pennsylvania law, 42 Pa.C.S.A § 5301, a registered foreign corporation consents to general jurisdiction and agrees to defend against all suits.   In contrast, in *Hoffman* the Supreme Court addressed conduct of a defendant *after* suit was instituted.   363 U.S. at 343.   It follows that personal jurisdiction over Electrolux in Pennsylvania comports with *Hoffman*.

Finally, plaintiff's contention that there is no personal jurisdiction over *him* in the Middle District of Pennsylvania is of no moment.   Indeed, plaintiff's argument demonstrates a fundamental misunderstanding of a basic principle of law.   Courts undertake the personal jurisdiction inquiry to protect the constitutional right of the *defendant*.  *See, e.g.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011); *International Shoe*, 326 U.S. at 317.   Because Kukich is the plaintiff, the question is not whether the Pennsylvania court would have personal jurisdiction over him.   Rather, the question is whether it has personal jurisdiction over Electrolux.

In light of the foregoing, I am satisfied that Electrolux has made a preliminary showing that plaintiff could have filed suit in the Middle District of Pennsylvania.

## C.

The Court must weigh several factors in considering the motion to transfer under § 1404(a).  As stated, these include: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *Plumbing Servs., Inc.*, 791 F.3d at 444.

### 1.  Plaintiff's Choice of Venue

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'"  *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g.*, *Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table).  Ordinarily, unless the balance of factors point "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *see Gilbert*, *supra*, 32 F. Supp. 3d at 607; *Mamani*, 547 F. Supp. 2d. at 469.  This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'"  *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also, e.g.*, *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (Plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").  However, "a court need not accord the choice as

much weight when the 'forum has no connection with the matter in controversy.'" *Mamani*, 547 F. Supp. 2d at 473 (quoting *Dicken*, 862 F. Supp. at 93); *accord Lynch*, 237 F. Supp. 2d at 617.

Notably, "courts often give less weight to the plaintiff's choice of forum in class actions." *Byerson*, 467 F. Supp. 2d at 633.  This is because "'there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class claim.'" *Id.* (quoting *Eichenholtz v. Brennan,* 677 F. Supp. 198, 202 (S.D.N.Y. 1988)); *accord James v. Experian Solutions, Inc.*, 3:12-cv-902, 2014 WL 29041 (E.D. Va. Jan. 2, 2014). However, the choice of forum of the named plaintiff in a class action may be entitled to "significant weight" where that forum is "amenable to inexpensive discovery and trial because the forum is home both to the Plaintiffs and to key non-party witnesses." *Byerson*, 467 F. Supp. 2d at 633.

Citing *James*, 2016 WL 29041, and *Byerson*, 467 F. Supp. 2d 627, Electrolux argues: "Plaintiff's choice of Maryland should be given little weight."  ECF 25-1 at 16.  In support, Electrolux points out that plaintiff is the only individual connected to the case who is located in the District of Maryland.  ECF 33 at 10.  And, Electrolux argues that, given the pending Pennsylvania action, "keeping this action in the District of Maryland will waste judicial resources and unnecessarily duplicate costly discovery."  *Id.*

Kukich argues that the Court should afford great weight to his choice of forum.  ECF 32 at 11-12.  He asserts, *id.*: "Mr. Kukich filed in his home forum, where he purchased the defective microwave, where it remains installed, and where he seeks to represent a Rule 23(b)(3) Maryland state law damages class."  Kukich's decision to bring his suit in Maryland is not entitled to substantial weight, given his intent to seek certification of a national class.  In light of the 800,000 Microwaves with allegedly defective handles that plaintiff alleges were sold by

Elextrolux (ECF 1 ¶ 2), there will likely be class members from every state and the District of Columbia.  And, Kukich has not argued that his choice of forum should be afforded significant weight on the ground that Maryland  is home to **both** plaintiff **and** key non-party witnesses.

Citing *Volvo Constr. Equip. N. Am. Inc. v. CLM Equip Co., Inc.*, 386 F.3d 581 (4th Cir. 2004), Kukich also argues that transfer to the Middle District of Pennsylvania would frustrate his request for nationwide declaratory relief, because the Pennsylvania court lacks "independent jurisdiction" over him.  ECF 32 at 12.  This argument is not persuasive.  As Electrolux notes (ECF 33 at 11), in *Volvo Construction*, 386 F.3d at 592, the Fourth Circuit recognized that "a federal court must have an independent basis of *subject matter jurisdiction* over a case in order to have jurisdiction over a declaratory judgment claim . . . ."

For these reasons, plaintiff's decision to file suit in Maryland is entitled to some weight, but not to substantial weight.

## 2.  Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  Wright & Miller § 3849.  Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other."  *Id.*; *see Pinpoint IT Services, L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

Electrolux prefers "to litigate the two related actions in one forum as it will be less expensive, more efficient, and will avoid the possibility of inconsistent verdicts."  ECF 25-1 at 16.  It points out that significant discovery has already taken place in the *Rice* case in

Pennsylvania, and that a transfer will "prevent repeating all of the work already done in a case that has proceeded through the court system for almost two years." *Id.* Moreover, the lawyers representing plaintiff here also represent the plaintiff in *Rice*. *Id.*

Kukich counters that it would be burdensome to litigate the case in Pennsylvania. ECF 32 at 12-13. In addition, he asserts that "the Middle District does not have personal jurisdiction over Mr. Kukich . . . ." *Id.* at 12. And, he contends that "the convenience of counsel is irrelevant." *Id.* at 13 (citing *Ready Transp., Inc. v. AAR Mfg., Inc.*, No. 02:06-cv-1053-GEB-KJM, 2006 WL 2131308 (E.D. Cal. July 27, 2006)). Kukich asserts, ECF 32 at 13.: "At bottom, the only person who will be inconvenienced by a transfer to the Middle District is Mr. Kukich, whose home is 160 miles away from Williamsport, Pennsylvania – a town he has never been to."

In my view, the convenience of the parties militates against transfer. To the extent that it would be inconvenient for Electrolux to litigate the case in Maryland, a transfer would merely shift the inconvenience from Electrolux to Kukich. ECF 32 at 13; *see also Pinpoint IT Servs.*, 812 F. Supp. 2d at 721 ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

### 3.   Convenience of Witnesses

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers*, 121 F. Supp. 2d at 466; *accord Mamani*, 547 F. Supp. 2d at 473; *see also* Wright & Miller § 3851 ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a).[]"). However, "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial.[]" Wright & Miller § 3851.

Defendant argues that it would be more convenient for the witnesses if the case were tried in Pennsylvania.  ECF 25-1 at 17.  Electrolux also argues that it will be inconvenient for expert witnesses to "travel to two different jurisdictions" and to "be subject to multiple depositions . . . ."  *Id.* at 17-18.  It states, *id.*: "Defendant's witnesses who have already been deposed and will be deposed in the coming months in the Pennsylvania Action would likely be subject to depositions for a second time if this matter is not transferred."

Kukich argues, ECF 32 at 13: "All of Electrolux's witnesses were deposed near the company's headquarters in North Carolina and Mrs. Rice was deposed in Philadelphia." Moreover, he points out that the deposition testimony obtained in *Rice* is "equally admissible in this action."  *Id.* at 13.  Further, Kukich states that, "in the age of electronic discovery, the location of documents has little impact on the convenience to either party."  *Id.*  He also maintains that "the convenience of experts carries no weight in the transfer analysis; they can be found in any district and compensated for their time."  *Id.* (citing *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1195 (S.D. Cal. 2007)).

In my view, the convenience of the witnesses is a neutral factor in the context of this case.  Neither side has identified any witness who would be inconvenienced by a trial in one district or the other.  *See* ECF 25-1; ECF 33. Moreover, the inconvenience to the expert witnesses, if required to appear in two districts, is insubstantial, considering the close proximity of the two districts.  *See* Wright & Miller § 3852 (noting that in many cases "the testimony of expert witnesses will be of critical importance" and that it "would be as undesirable to have this testimony presented to the trier of fact by deposition as it would be to do without the oral testimony of any other witness.[1]").  And, as Kukich points out, at least some of the discovery obtained in the *Rice* case could be used in this case, without the need for duplication.

Thus, the convenience of the witnesses weighs neither for nor against transfer.

### 4. Interest of Justice

Electrolux insists that the interest of justice favors a transfer of this case to the Middle District of Pennsylvania.  ECF 25.  In general, the interest of justice factor is "amorphous and somewhat subjective" and allows the court to "consider many things."  Wright and Miller § 3854.

Electrolux argues: "Because of the significant and substantive similarities between this action and the Pennsylvania Action, the interests of justice weigh heavily in favor of transferring this action to the Middle District of Pennsylvania to avoid duplicative litigation, avoid inconsistent rulings, and promote judicial efficiency."  ECF 25-1 at 5.  Defendant also argues that transfer is in the interest of justice based on the relatively lighter case load and shorter time to trial in the Middle District of Pennsylvania, as compared to the District of Maryland.  *Id.* at 17.

Kukich counters that the interest of justice favors maintaining the action in Maryland because, in his view, a Maryland court should decide whether Maryland law entitles Maryland consumers to damages.  ECF 32 at 14.  Plaintiff adds that "all of the evidence related to his claims" is in Maryland.  *Id.* at 15.  And, Kukich contends that "basic fairness" requires denial of Electrolux's Motion, because he "should not be forced to litigate" his case in Pennsylvania, "more than 160 miles from his home."  *Id.*

### i.      Pendency of the Pennsylvania Litigation

"A significant factor in considering the interests of justice is 'avoiding duplicative litigation in courts,' and the Court 'may appropriately consider the conservation of judicial resources and comprehensive disposition of litigation.'"  *Mamani*, 547 F. Supp. 2d at 474 (quoting *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md.

2000)); *see also* Wright & Miller § 3854 ("[M]any courts have transferred to a forum in which other actions arising from the same transaction or event, or which were otherwise related, were pending.").  When a similar case is already pending in another district, transfer of related claims is "favored" because it "may facilitate efficient pretrial proceedings and discovery" and also "because it avoids inconsistent results."  *D2L*, 671 F. Supp. 2d at 783.   Moreover, there is "judicial economy in having the same judge consider the same underlying facts and issues only once . . . ."  *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 939 (E.D. Va. 2005).  As the Supreme Court said in *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960), "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent."  *See also D2L Ltd.*, *supra*, 671 F. Supp. 2d at 783 ("The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum.").

A comparison of the allegations and the claims in *Rice* with those in the case *sub judice* reveals that the two cases are virtually identical in all material respects.  Both cases involve the identical product produced by the same defendant, and they present virtually identical factual allegations.  Both plaintiffs maintain that the Microwave handles (part no. 5304471830) for the Electrolux Over-The-Range Microwave Ovens are defective because, when the cooking surfaces underneath the Microwaves are in use, the Microwave handles reach a dangerously hot temperature, in excess of 168°F (75.55°C).  Moreover, both cases involve several of the same causes of action.  And, both plaintiffs are represented by several of the same lawyers.  However, *Rice* sued Electrolux in February 2015, about a year before Kukich filed suit.  Therefore, the

parties in *Rice* have already conducted significant discovery. However, much of it would be pertinent to the case *sub judice*.

In addition, the plaintiff in *Rice* seeks to certify two classes. *Id.* ¶¶ 62-63. First, she seeks to certify a class under Rule 23(b)(2), consisting of "[a]ll persons in the United States who own a Microwave with a stainless steel handle (Part # 5304471830)." *Id.* ¶ 62. Second, she seeks to certify a class under Rule 23(b)(3), consisting of "[a]ll persons in the Commonwealth of Pennsylvania who own a Microwave with a stainless steel handle (Part # 5304471830)" and/or all persons in "other states" (*i.e.*, the remaining forty-nine states and the District of Columbia) "who own a Microwave with a stainless steel handle (Part # 5304471830)." *Id.* ¶ 63. Kukich is also seeking "to certify a nationwide class that encompasses the same putative nationwide class at issue in the Pennsylvania Action," as well as a Maryland class. ECF 25-1 at 13. By Memorandum (ECF 25-4) and Order (*Rice*, ECF 25) of July 28, 2015, Judge Brann, *inter alia*, dismissed Rice's "other states" subclass. ECF 25-4 at 26; *Rice*, ECF 25.[4]

Kukich argues that the pendency of the case in the Middle District of Pennsylvania does not support the transfer of this case. ECF 32 at 14-15. Moreover, Kukich contends that the risk of inconsistent adjudications is diminished here because his suit makes claims under Maryland law, whereas the claims of the Pennsylvania class will be determined under Pennsylvania law. *Id.* at 15.[5]

---

[4] Electrolux submitted Judge Brann's Memorandum as an exhibit here. *See* ECF 25-4. However, defendant did not include the Order. Therefore, I have referred to the Order as it is docketed in *Rice*.

[5] In plaintiff's Notice of Supplemental Authority, Kukich also asserted that the proceedings in *Rice* were stayed pending that court's decision on whether it has subject matter jurisdiction. ECF 31; *see* ECF 31-1 (Order staying *Rice*). Kukich argued that, "if the Middle District Court decides that it lacks subject matter jurisdiction, Defendant's transfer motion will be moot." ECF 31. However, as Electrolux pointed out in its Notice of Supplemental Authority (ECF 38), Judge Brann has since determined that *Rice* "properly invokes the Court's subject

In my view, the pendency of the *Rice* case in the Middle District of Pennsylvania strongly supports the transfer, for the reasons advanced by Electrolux. As indicated, the cases involve the identical alleged defect. In particular, both plaintiffs contend that a stainless steel handle (Part # 5304471830) on Electrolux over-the-range Microwaves is defective because the handles can reach temperatures in excess of 168°F (75.55°C) during the normal operation of the cooking range. *See, e.g.*, ECF 1 ¶ 1; ECF 25-3 ¶ 1. And, lawyers from the same law firms represent the plaintiffs in both cases.

It is also evident that much of the discovery will be the same for both cases. Electrolux states, ECF 25-1 at 14:

> [T]he parties have already conducted and continue to conduct significant discovery in the Pennsylvania Action to explore critical substantive factual and legal issues in the case, including the design and manufacture of the microwave handle, the nature of the alleged defect, and the extent of the alleged defect - the exact same issues in this case.

Electrolux also asserts, *id.* at 9:

> Electrolux responded to a comprehensive set of interrogatories and has produced several amendments to its interrogatory responses. It also responded to a comprehensive set of document requests and has produced over 40,000 pages of documents. Plaintiff deposed two Electrolux witnesses pursuant to Fed. R. Civ. P. 30(b)(1), and one Electrolux witness pursuant to Fed. R. Civ. P. 30(b)(6). Three more Rule 30(b)(1) depositions are scheduled for November 2016, and a second Rule 30(b)(6) deposition (covering thirty-four topics) is scheduled for December 2016. Plaintiff, in turn, responded to a comprehensive set of interrogatories and document requests. Electrolux inspected Plaintiff's microwave and deposed Plaintiff.

It is also noteworthy that Judge Brann has presided over *Rice* since the case was filed, and he is undoubtedly familiar with the factual and legal issues. Defendant notes, *id.* at 9:

> Judge Brann [has] resolved several discovery disputes between the parties, including motions to compel. In particular, Judge Brann addressed whether

matter jurisdiction" in his Memorandum and Order of January 10, 2017. ECF 38-1; *Rice*, ECF 106, ECF 107.

Electrolux has "control" over the manufacturers of the stainless steel handles such that Electrolux would be obligated to produce documents in the manufacturers' possession.

Furthermore, both plaintiffs seek to certify the same national class, pursuant to Rule 23(b)(2).  As noted, in this case plaintiff seeks to certify a class consisting of all "persons in the United States who own a Microwave with a 400-Grade Stainless Steel Handle."  ECF 1 ¶ 44.  In *Rice*, plaintiff seeks to certify a class of all "persons in the United States who own a Microwave with a stainless steel handle (Part # 5304471830)."  ECF 25-3 ¶ 62.  And, as Kukich stated in the Complaint, the handle in question (part 5304471830) is "constructed with 400-grade stainless steel."  ECF 1 ¶ 1.  Moreover, as Electrolux contends (ECF 33 at 12), "The law of <u>all fifty-one jurisdictions</u> would apply to the putative class claims - not just Maryland law."  (Emphasis in original) (citing *Block v. Abbott Labs*, No. 99 C 7457, 2002 WL 485364, at *8 (N.D. Ill. Mar. 29, 2002)).

Contrary to plaintiff's contention, the transfer of the case *sub judice* to the Middle District of Pennsylvania will help avoid inconsistent judicial rulings.  And, "the rights of all potential class members can be fully protected" if this case is transferred to Pennsylvania. *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006).

To be sure, the case in Pennsylvania has been pending since 2015.  But, it would be a complete waste of time and resources to undertake the same discovery in a separate case. Moreover, I agree with defendant that "there is no need to burden two courts with virtually identical lawsuits. Rather, this action should be heard by the court that is already familiar with the issues to conserve judicial resources and to prevent inconsistent rulings . . . ."  ECF 25-1 at 13-14.

In sum, the pendency of the *Rice* case in the Middle District of Pennsylvania involves the same alleged defect of the same part that was manufactured and designed by the same defendant. The claims are also being litigated by many of the same attorneys.  And, the national classes that the plaintiff here and in *Rice* seek to certify are effectively the same.  Accordingly, the pendency of similar litigation in the Middle District of Pennsylvania strongly favors the transfer of this case to that forum.

### ii.    Relative Dockets

"Another element relevant to the interest of justice is a comparison of the docket conditions in the two courts."  Wright and Miller § 3854.  In considering this factor, "'the real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'"  *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (alteration omitted) (quoting *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1337 (9th Cir. 1984)).  Generally, this factor does not command substantial weight in considering whether to transfer a case.  *See, e.g.*, *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 793 (E.D. Va. 2007).

Electrolux argues in the Motion that transfer will allow for the speedier resolution of this case because the case load in the Middle District of Pennsylvania is lighter than in Maryland. ECF 25-1 at 17.  Electrolux states, *id.*: "In the twelve-month period ending March 31, 2016, there were 4,177 civil cases filed in the District of Maryland but only 2,513 civil cases filed in the Middle District of Pennsylvania.[]"  (Citing Federal Judicial Caseload Statistics, *available at*: http://go.usa.gov/x9TTp).  And, Electrolux notes, *id.*: "The median time to trial during the same period in the Middle District of Pennsylvania is 16.9 months, while the median time to trial in

the District of Maryland was 30.2 months.[]"   (Citing Federal Judicial Caseload Statistics, *available at*: http://go.usa.gov/x9Tb9).

Kukich did not respond to this argument.  *See* ECF 32.

Although this factor does not command great weight, it favors transfer.

### iii.    Applicable Law

In diversity cases, federal courts apply federal procedural law and the substantive law of the state in which the proceeding is brought.  *See, e.g.*, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Leichling v. Honeywell Intern., Inc.*, 842 F.3d 848, 851 (4th Cir. 2016); *see also Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016) ("Under the familiar *Erie* doctrine, we apply state substantive law and federal procedural law when reviewing state-law claims.").  "Familiarity with applicable law is one of the interests of justice factors." *Aphena Pharma Solutions-MD LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 320 (D. Md. 2012) (citing *Dicken v. United States*, 862 F. Supp. 91, 93-94 (D. Md. 1994)); *see also* Wright and Miller § 3854 ("In diversity of citizenship cases, in which state law provides the substantive rules of decision, it is an advantage to have that law applied by federal judges who are familiar with the governing state law.")

However, "[t]his consideration is given 'significantly less weight when the case involves basic or sufficiently well-established . . . issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee state.'"  *Topiwala v. Wessell*, WDQ-11-0543, 2012 WL 122411 at *8 (D. Md. Jan. 12, 2012) (alteration in *Topiwala*) (quoting Wright and Miller § 3854); *see also, e.g.*, *Snyder v. Bertucci's Restaurant Corp.*, No. 12-5382, 2012 WL 6601384 at *5 (E.D. Pa. Dec. 18 2012) ("Federal judges are frequently called upon to apply the laws of other states, and basic tort law is not so

complicated as to advocate heavily in favor of transfer."); *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 178 (E.D.N.Y. 2003) ("New York contract law is not overly complex so as to unduly burden the South Carolina court.").

In opposing transfer, Kukich argues that the case *sub judice* should be heard in this Court because this Court possesses "a unique understanding of Maryland state law under which all of his claims arise[]."  ECF 32 at 14.  According to Kukich, "while there are similarities in the state's warranty law, there are distinct differences between Pennsylvania and Maryland negligence law."  *Id.*  Kukich claims, *id.*: "While Pennsylvania bars negligence claims under the economic loss doctrine, Maryland permits them where a defective product creates a substantial and unreasonable risk of personal injury."  (Citation omitted).  Thus, he asserts, *id.*: "It should be a Maryland Court, not a Pennsylvania one, that decides if the microwave handle at issue satisfies this Maryland state law standard entitling Maryland consumers to damages."

In its Reply, Electrolux notes that plaintiff's counsel "initially asserted the putative Maryland-only class claims in the Middle District of Pennsylvania."  ECF 33 at 12 (citing ECF 32 at 6-7).  Thus, Electrolux argues: "Plaintiff's self-serving protestations that the Middle District of Pennsylvania should not decide questions of Maryland state law as well as his entreaties to 'basic fairness' are disingenuous and should be disregarded by the Court."  ECF 33 at 12.  Furthermore, Electrolux argues that the applicable law issue is less relevant given that plaintiff seeks to certify a national Rule 23(b)(2) class, which would implicate the law "of all fifty-one jurisdictions, and "not just Maryland law."  *Id.* (Emphasis in original) (citation omitted).

In my view, the applicability of Maryland law in this case does not weigh against transfer.  Kukich does not suggest that Maryland law is so complicated that a Pennsylvania judge

would be unable to discern it and apply it.  Indeed, Kukich has not suggested any reason why the Pennsylvania court would be unequipped to apply the law of a neighboring state.

### III.    Conclusion

I recognize that plaintiff chose to file suit in Maryland, and it would be more convenient for him to maintain the case in this District.  But, in my view, the balance of factors strongly supports the transfer of this case to the Middle District of Pennsylvania.  Therefore, I shall GRANT the Motion.  ECF 25.

An Order follows, consistent with this Memorandum Opinion.


Date:  January 24, 2017                     _____/s/_____
                                            Ellen Lipton Hollander
                                            United States District Judge